OPINION
{¶ 1} This is an appeal from a final judgment of the court of common pleas in favor of the defendant on the plaintiff's claim for relief for breach of contract, following a trial to the bench. *Page 2 
 {¶ 2} Plaintiff, Jimsco, Inc. ("Jimsco"), owned and operated a recycling facility called the Taylorsville Road Hardfill. ("Hardfill"). The facility is in Huber Heights, and is adjacent to a wellfield for a municipal water service operated by the City of Huber Heights. That proximity produced a number of regulatory issues following Jimsco's acquisition of the Hardfill in 1991.
 {¶ 3} In 2002-2003, the principals of Jimsco, James McDonald and H.A. Scott, acting through an intermediary, contacted Huber Heights Councilman Mark Campbell, informing Campbell that Jimsco might be willing to sell the Hardfill site to Huber Heights. After discussions, Campbell and other officials of Huber Heights expressed an interest in the purchase. Further negotiations ensued.
 {¶ 4} On January 29, 2004, Jimsco and Huber Heights entered into a written agreement, the "Purchase Contract," in which Huber Heights agreed to purchase the Hardfill site from Jimsco. Section 15 of the Purchase Contract states:
 {¶ 5} "15. CONTINGENCIES. This Agreement shall be contingent upon all of the following:
 {¶ 6} "A. Purchaser shall not be required to close the purchase unless Purchaser shall have obtained: (a) federal funding pursuant to the November, 2003 Funding Proposal *Page 3 
(`Funding Proposal') prepared for the House Appropriations Committee's Subcommittee on Energy and Water Development and (b) funding from the State of Ohio or other third party sources, with a combined total amount of funding under (a) and (b) of not less than $3,250,000. If on the earlier of: (i) the date the President of the United States signs such appropriations bill or (ii) January 31, 2005 this funding contingency has not been satisfied, the Seller shall have the right to cancel this Contract at any time thereafter without further liability to either Purchaser or Seller.
 {¶ 7} "* * *
 {¶ 8} "(D) Purchaser and Seller shall use good faith efforts to satisfy all of the contingencies in Paragraph 15.(A) through (C) above as quickly as possible."
 {¶ 9} Officials of Huber Heights engaged in discussions with several members of Congress and/or their staffs to obtain federal funding. Those efforts came to naught. Jimsco filed its complaint in the underlying action in October of 2005, alleging a breach of contract. Jimsco sought damages of $1,500,000.00, representing a difference between the price for which Jimsco had since sold Hardfill to another purchaser and the price Huber Heights promised to pay.
 {¶ 10} The case was tried to the bench. After hearings *Page 4 
were concluded, the common pleas court entered judgment for Huber Heights on Jimsco's complaint. Based on its extensive findings of fact, the trial court concluded that: (1) "the only viable means to achieve the needed funding was through a federal legislative earmark," (2) paragraph 15(A) of the Purchase Contract imposed a condition precedent on Huber Heights' duty to purchase Hardfill, (3) Huber Heights made a bona fide effort to obtain the funding, and (4) that effort satisfied the duty of good faith imposed on Huber Heights by paragraph 15(C) of the Purchase Contract.
 {¶ 11} Jimsco appeals from the judgment for Huber Heights.
FIRST ASSIGNMENT OF ERROR
 {¶ 12} "THE TRIAL COURT ERRED IN HOLDING THAT THE PURCHASE CONTRACT ONLY REQUIRED HUBER HEIGHTS TO PURSUE A FEDERAL LEGISLATIVE EARMARK AS FUNDING FOR THE PURCHASE."
 {¶ 13} Jimsco argues that in finding that Huber Heights was relieved of its promise to purchase Jimsco's land because Huber Heights had satisfied its obligation of good faith imposed by Section 15(A) of the Purchase Agreement, the trial court improperly relied on parol evidence to determine the intentions of the parties in that regard, and abused its discretion in finding that it was their intention to obtain a "legislative earmark." *Page 5 
 {¶ 14} The terms of a written, bilateral contract are conclusive of the intentions of the parties concerning the respective rights and duties the contact imposes on them, and the court may not rely on other evidence to make those determinations unless the relevant terms of the written agreement are incomplete, uncertain, or ambiguous. Ayres v.Cook (1941), 140 Ohio St. 281.
 {¶ 15} The "Funding Proposal" document to which Section 15(A) of the parties' Purchase Agreement refers contains a detailed description of and justification for a development of the land Huber Heights proposed to purchase from Jimsco, and a breakdown of the expenditures that purchase and development would involve. Concerning the funding necessary to complete the project, the Funding Proposal states:

 Sources
 • Federal Funding (76%) $3,600,000
 • State Assistance (16%) 750,000
 • Local (City) (8%) 390,000
 Sources $4,740,000"

 {¶ 16} Jimsco argues that, being open-ended, the required "Federal Funding" of $3,600,000 would include not only a congressional "earmark," or grant, but also a form of loan or other cooperative enterprise. However, because it is open-ended, the Funding Proposal is incomplete, at least for purposes of determining whether Huber Heights satisfied its *Page 6 
obligation of good faith imposed by Section 15(A) of the Purchase Agreement. Therefore, the trial court properly took other evidence to determine the intentions of the parties concerning the particular federal funding that Huber Heights promised to make a good faith effort to obtain.
 {¶ 17} Jimsco complains that the court abused its discretion when it found that "the only viable means to achieve that needed funding was through a federal legislative earmark," and that Huber Heights had satisfied its duty to act in good faith in seeking to obtain that funding. Jimsco points out that other sources had been discussed by the parties and/or suggested by members of Congress or their staff.
 {¶ 18} Jimsco's argument is a manifest weight of the evidence challenge to the judgment the trial court entered on the finding it made. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris Company v. Foley Construction Company (1978),54 Ohio St.2d 279, Syllabus by the Court. In Hill v. Briggs (1996),111 Ohio App.3d 405, 412, the Court of Appeals of Franklin County held: *Page 7 
 {¶ 19} "When a party asserts that the finding is against the manifest weight of the evidence, he must demonstrate that the evidence could lead to only one conclusion and that conclusion is contrary to the judgment. When addressing the sufficiency of the evidence, the focus is all of the evidence presented by either party. Reversible error occurs when there is insufficient evidence to sustain the judgment or when the evidence for the judgment is so substantially outweighed by all the evidence contrary, that the judgment cannot be reasonably sustained."
 {¶ 20} Jimsco argues that in their discussions the parties had not limited themselves to a federal earmark, and that one member of Congress identified possible sources of federal loans for which Huber Heights could apply. An "earmark" is a Congressional appropriation made without prior hearing, at the instance of a member who attaches it to a regular bill. The record demonstrates that the parties hoped to obtain an allocation of federal funds through the intervention and with the support of one or more members of Congress, and that Huber Heights met with those members or their staffs in an effort to obtain such funding. That is competent, credible evidence to support the trial court's finding that the parties contemplated use of the earmark process, and that under the *Page 8 
circumstances it was the only "viable" method of funding the proposed purchase and development of the Hardfill site by Huber Heights. The finding is not outweighed by evidence to the contrary.
 {¶ 21} Jimsco further argues that Huber Heights' failure to obtain federal funding did not relieve Huber Heights of its duty under Section 15(A)(b) of the Purchase Contract to obtain funding from "the State of Ohio or other third party sources, with a combined total amount of funding under (a) and (b) of not less that $3,250,000." The "(a)" funding is federal funding. Because that was not obtained, Section 15(A)(b) imposed no separate obligation to obtain funding from the State of Ohio or another third party.
 {¶ 22} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 23} "THE TRIAL COURT ERRED IN HOLDING THAT HUBER HEIGHTS SATISFIED ITS OBLIGATION TO PURSUE FUNDING UNDER THE PURCHASE CONTRACT."
 {¶ 24} This assignment of error likewise presents a weight of the evidence argument, and it is therefore subject to the standards of review discussed above.
 {¶ 25} Jimsco repeats its parol evidence and other funding sources arguments, but they are not determinative of the *Page 9 
question presented: whether the trial court's finding that Huber Heights satisfied its duty to act in good faith in pursuing the federal funding identified in Section 15(A)(a) of the Purchase Contract was against the manifest weight of the evidence.
 {¶ 26} Jimsco argues that several meetings Huber Heights had with two members of Congress or their staffs were but a "little more effort" (Brief, p. 23) than Huber Heights had made before that. The fact that those offices eventually proved unreceptive does not demonstrate that Huber Heights failed in its duty. The trial court found that Huber Heights satisfied its duty. Jimsco offers no substantial or convincing basis for us to find that the finding is against the manifest weight of the evidence. Hill v. Briggs.
 {¶ 27} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 28} "THE TRIAL COURT ERRED IN FAILING TO CONSIDER THE ISSUES OF PROXIMATE CAUSE AND DAMAGES."
 {¶ 29} We need not rule on the error assigned because it is rendered moot by our decisions overruling the prior assignments of error. App. R. 12(A)(1)(c).
 {¶ 30} The judgment of the trial court will be affirmed.
FAIN, J. And FROELICH, J., concur. *Page 1